UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAKEFERN FOOD CORP.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CHRISTOPHER MARCHESE A/K/A CHRISTOPHER MARCHESA A/K/A CHRISTOPHER MARCHESI, and FAMILY MARKETS LIMITED LIABILITY COMPANY,**<br><br>**Defendants.** | Civil Action No.:<br>2:20-cv-15949-WJM-MF<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of Defendants Christopher Marchese ("Marchese") and Family Markets Limited Liability Company's ("Family Markets" and, together with Marchese, "Defendants") alleged infringement of Plaintiff Wakefern Food Corp.'s ("Plaintiff" or "Wakefern") trademark in connection with Marchese's attempt to lease commercial real estate in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* and New Jersey common law. Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), ECF No. 16-1, as well as Plaintiff's motion for expedited discovery, ECF No. 20. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** and Plaintiff's motion for expedited discovery is **DENIED** as moot.

**I.   BACKGROUND[1]**

Plaintiff is a New Jersey corporation and the largest retailer-owned supermarket cooperative in the United States. Compl. ¶ 7. In total, Plaintiff's fifty-one (51) member companies own and operate approximately 353 supermarkets under the brands ShopRite, Price Rite Marketplace, The Fresh Grocer, Dearborn Market, Gourmet Garage, and Fairway Market across several states, including New Jersey, New York, Connecticut, Pennsylvania, Maryland, Delaware, Massachusetts, New Hampshire, Rhode Island, and Virginia. *Id.* Plaintiff is the exclusive owner of the ShopRite® name, brand, and mark registered with the United States Patent and Trademark Office, as well as numerous other

---

[1] Unless otherwise indicated, all facts in this section are taken from the Complaint, ECF No. 1, and are assumed to be true for purposes of this Opinion.

registered marks used in connection with the ShopRite® brand. *Id.* at ¶ 14. Plaintiff licenses the use of the ShopRite® mark exclusively to members of its cooperative. *Id.* at ¶ 16.

Defendant Marchese is a resident of New Jersey who formed, and serves as the registered agent and representative of, Defendant Family Markets. *Id.* at ¶ 8. Family Markets is a New Jersey company first formed by Marchese on May 19, 2015 for the stated purpose of carrying out a retail supermarket business. *Id.* at ¶ 9, Ex. B.[2] In the six years since its formation, it appears that Family Markets has never carried out any business and does not currently own or operate any supermarket. *Id.* at ¶¶ 25, 27. Defendants are not members of the Wakefern cooperative, are not associated with or related to Plaintiff or any members of the Wakefern cooperative, and do not have any agreements or licenses to use any of Plaintiff's trademarks, including those connected with the ShopRite® brand. *Id.* at ¶¶ 17-20.

On June 26, 2020, Marchese contacted Plaintiff and spoke to one of Plaintiff's representatives about the possibility of joining the Wakefern cooperative. *Id.* at ¶ 29. During that conversation, Marchese allegedly told the Wakefern representative that he owned both Family Markets and a number of "Foodtown" supermarket locations across New Jersey, including a specific Foodtown location in Plainsboro, New Jersey. *Id.* at ¶¶ 31, 33. Marchese was instructed to submit a summary of his qualifications in writing; however, Marchese did not contact Plaintiff again or provide any sort of follow-up. *Id.* at ¶¶ 35-36. Following this conversation, Plaintiff investigated Marchese's claimed ownership interest in the Plainsboro Foodtown supermarket but discovered that the location was in fact vacant. *Id.* at ¶ 32.

In addition to his call with a Wakefern representative, Marchese also contacted a real estate broker to inquire about a listing of a vacant 50,000 square foot supermarket in Middlesex, New Jersey. *Id.* at ¶ 37. Marchese allegedly informed the broker that he was interested in leasing the vacant space, that he was the owner/operator of an active supermarket business in Family Markets, that he had an ownership interest in several members of the Wakefern cooperative, including four ShopRite® supermarkets in New Jersey, and that he had started the process of becoming a Wakefern member himself. *Id.* at ¶¶ 37-38. Following his conversation with Marchese, the broker contacted Wakefern to confirm his membership in the cooperative and was informed that Marchese was not a

---

[2] The Complaint attaches as exhibits two separate certificates of formation for an entity called "Family Markets Limited Liability Company" filed with the Division of Revenue and Enterprise Services in the New Jersey Department of the Treasury, each with a different assigned identification number. The first certificate was filed on May 19, 2015 and the second certificate was filed on October 26, 2016. Both certificates, however, indicate that they relate to Family Markets, identify Family Markets as a supermarket business, list the same business address for Family Markets, and identify Marchese as registered agent. *Compare* Compl., Ex. B *with* Compl., Ex. C.

member and had no ownership interest in or affiliation with Wakefern or the ShopRite® brand. *Id.* at 39.

Wakefern filed its four-count Complaint on November 12, 2020 asserting causes of action against Defendants for (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition under New Jersey state common law; and (4) a declaration that Defendants have no interest in Wakefern, any of its members, or the ShopRite® brand under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## II.   LEGAL STANDARD

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   DISCUSSION

Plaintiff broadly alleges that Defendants' conduct infringed its trademark rights and created a false association between the parties that was likely to cause confusion among consumers. Defendants have moved to dismiss each of the counts in the Complaint. The Court addresses each claim in turn.

### A.   Count One: Trademark Infringement Under 15 U.S.C. § 1114

Plaintiff claims that Defendants' use of the ShopRite® name in attempting to lease vacant commercial real estate violated its trademark rights in the ShopRite® mark. In

3

seeking dismissal of Plaintiff's trademark infringement claim, Defendants argue, among other things, that they have never actually used the mark in commerce and, therefore, have never performed any infringing activity with respect to the ShopRite® mark. The Court agrees with Defendants.

Section 32(1)(a) of the Lanham Act provides that any person who, without consent of the trademark holder, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" shall be liable for trademark infringement. 15 U.S.C. § 1114(1)(a) (alterations added). To state a claim for trademark infringement under 15 U.S.C. § 1114, Plaintiff must show: (1) the mark at issue is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the Defendants' use of the mark is likely to cause confusion among consumers as to the origin of the goods or services at issue. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Here, there is no dispute between the parties that the ShopRite® mark is valid, legally protectable, and owned by Plaintiff. Accordingly, the sufficiency of Plaintiff's allegations with respect to its trademark infringement claim turn on whether it has properly alleged a likelihood of confusion.

Analyzing this third element of a trademark infringement claim is itself a two-part inquiry. The Court must consider not only (1) whether "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark" but also (2) "the more elementary question of whether [Defendants] made any use of the mark" at all. *See Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, No. 2:11-cv-4390-CCC-MF, 2018 WL 3472628, at *4 (D.N.J. July 19, 2018); *Zany Toys, LLC v. Pearl Enters., LLC*, No. 13-5262 (JAP)(TJB), 2014 WL 2168415, at *8 (D.N.J. May 23, 2014). It is with respect to the latter inquiry that Plaintiff's claim fails.

The Court notes that there are comparatively few cases thoroughly addressing the sorts of unlawful "use" necessary to state a claim for trademark infringement. *Howard Johnson Int'l Inc. v. Vraj Brig, LLC*, No. 08-1466, 2010 WL 215381, at *6 (D.N.J. Jan. 14, 2010). Indeed, there remains an open question in the Third Circuit as to the scope of "uses" encompassed by Section 1114's "use in commerce" requirement: some courts in this District have continued to refer to Section 1127's definition of "use in commerce" as controlling, while other courts and commentators have found that Section 1127's definition applies only to the specified types of uses necessary for trademark protection and registration rather than the broader category of uses that may amount to trademark infringement. *Compare Nike*, 2018 WL 3472628, at *5 *with New Balance Athletics Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334, 344-45 (D. Del. 2019); *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 25:26 (5th ed. 2017).[3]

---

[3] In this respect, the Court notes that both parties rely on the Lanham Act's definition of "use in

The Court need not resolve that conflict here, however, because it finds that under either approach Plaintiff has not established that Defendants have used its mark in commerce.

As Plaintiff itself acknowledges, the "essence" of its trademark infringement claim rests entirely on Marchese's alleged conversation with an unidentified real estate broker in which he falsely claimed an association with Wakefern and the ShopRite® brand. *See* Opp'n at 12. Plaintiff is correct that Marchese's conduct in invoking Wakefern and the ShopRite® brand may have been an affirmative act ultimately designed to achieve some sort of commercial benefit (i.e. the acquisition of commercial space from which to operate a supermarket). However, there are no allegations that Defendant has ever offered, distributed, possessed, sold, or advertised any goods or services of any kind bearing or imitating Plaintiff's marks, or even had the capacity to do so. Nor are there any allegations that, had Marchese been successful in securing the vacant commercial property, he would have engaged in any infringing conduct in the actual operation of a supermarket. *See Howard Johnson*, 2010 WL 215381, at *5 (finding no trademark infringement where defendant did not use any protected mark in the provision of goods or services). Indeed, Plaintiff's allegations suggest that Marchese made false representations to the broker in order to take advantage of the broker's services rather than to sell or promote his own. Moreover, Plaintiff has not cited any case, and the Court is aware of none, in which a single, private business conversation, without any corresponding dissemination or marketing to the broader purchasing public, has been found to constitute a "use in commerce" for purposes of trademark infringement. *Cf. Peek & Cloppenburg KG v. Revue, LLC*, No. 11 Civ. 5967 (DAB), 2012 WL 4470556, at *4 (S.D.N.Y. Sept. 19, 2012) (noting that business negotiations between defendant and certain U.S. retailers to sell allegedly infringing brands did not constitute "use in commerce," but finding defendant had nonetheless used mark in commerce through online advertisements directed at U.S. consumers).

Accordingly, the Court finds that Plaintiff has failed to state a claim for trademark infringement under 15 U.S.C. § 1114.

### B. Count Two: False Advertising Under 15 U.S.C. § 1125(a)(1)(B)

Plaintiff also asserts that Marchese's allegedly false representations to the real estate broker constitute false advertising under Section 43(a) of the Lanham Act. The Court disagrees.

Section 43(a)(1)(B) of the Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see also Parks, LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017). To state a claim for false advertising under the Lanham Act, Plaintiff must establish: (1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial

---

commerce" under 15 U.S.C. § 1127.

portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).

However, "[a] threshold question that courts must address in determining whether an alleged false statement is actionable under the Lanham Act is whether such a statement constitutes "commercial advertising or promotion." *Refundo, LLC v. Drake Enters., Ltd.*, No. 13-643 (JLL), 2013 WL 1750016, at *3 (D.N.J. Apr. 22, 2013). Though not defined by the Lanham Act itself, courts in this District and elsewhere have identified four primary elements of commercial advertising as used in Section 43(a)(1)(B): (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within the industry." *N.Y. Machinery, Inc. v. Korean Cleaners Monthly*, No. 17-cv-12269(SDW)(LDW), 2018 WL 2455926, at *3 (D.N.J. May 31, 2018); *see also Gordon & Beach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1537 (S.D.N.Y. 1994).

Assuming, without deciding, that Plaintiff's claim satisfies the first three elements of this test, Plaintiff has not established the fourth and final element: that Marchese's false representations were sufficiently disseminated to the relevant purchasing public. Though ordinarily a question of fact inappropriate for resolution on a motion to dismiss, there are certain circumstances which, as a matter of law, fall below this threshold. For example, while the precise boundary at which a statement is considered sufficiently disseminated is heavily fact dependent, it is clear that, at a minimum, the Complaint must allege that the Defendants "target[ed] a class or category of purchasers or potential purchasers, not merely particular individuals." *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 19-20 (1st Cir. 2003); *see also Innovasystems, Inc. v. Proveris Scientific Corp.*, No. 13-05007, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) ("Communications that target . . . merely particular individuals will not suffice." (quotations omitted)). Similarly, courts have routinely found that "purely private communications and other messages that are not publicly disseminated are not 'advertising' or 'promotion' as contemplated by Section 1125(a)(1)(B)." *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014) (collecting cases). Moreover, Plaintiff must allege that the false advertising actually reached consumers of the relevant products rather than some non-consuming party. *Compare Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993) (finding private letter to "non-consuming licensor" was not commercial advertising or promotion for purposes of Lanham Act) *with Refundo*, 2013 WL 1750016, at *4-5 (noting that complaint alleged tax preparers to whom false statements were made were plaintiff's customers).

Here, it is clear that Marchese's allegedly false statements were not sufficiently disseminated so as to fall within the scope of activity prohibited by the Lanham Act. There is no indication that Marchese's statements were ever intended to reach, or ever did reach,

any segment of the purchasing public or were made as "part of an organized campaign to penetrate the relevant market." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 461 (D.N.J. 2009) (quotations omitted). To the contrary, the Complaint alleges that Marchese sought out a specific, unidentified real estate broker to inquire about the listing of a specific vacant commercial property. Indeed, the alleged communications between the broker and Marchese took place not because the broker was a client or consumer of either Plaintiff's or Defendants' goods or services, but because Marchese wanted to take advantage of the broker's own services in securing a lease. In other words, Marchese's allegedly false statements regarding his relationship with Wakefern were made in the context of a private conversation with a targeted individual acting in his capacity as a broker rather than shared more broadly to a class of potential supermarket consumers. Such isolated, private statements, particularly to non-consumers, do not constitute the sort of dissemination to the relevant purchasing public necessary to state a false advertising claim under Section 43(a) of the Lanham Act. *See Pitney Bowes, Inc. v. ITS Mailing Sys., Inc.*, No. 09-05024, 2010 WL 1005146, at *5 (E.D. Pa. Mar. 17, 2010) (finding that misrepresentations of identity made to competitor in attempt to obtain confidential information did not constitute false advertising because the false statements were "not false representations about [the defendants'] or [the plaintiff's] products made for public dissemination" (alterations added)).

      Plaintiff's reliance on *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, No. 12-cv-05610, 2014 WL 31719 (D.N.J. Jan. 28, 2014) for the proposition that it need not "introduce supporting evidence to make it probable that Defendants' [false statements] were disseminated widely enough to constitute 'commercial advertising or promotion'" is misplaced. In that case, Judge Wolfson rejected the defendants' argument that two email exchanges between defendants and prospective clients of the plaintiff could not constitute "sufficient dissemination" for purposes of a false advertising claim. *Id.* at *5. In so doing, Judge Wolfson noted that the plaintiff offered the two email exchanges as evidence in support of its allegations of a "much larger scheme of libelous and slanderous statements" that were publicly distributed and used to discredit the plaintiff's business. *Id.* Here, by contrast, Plaintiff has alleged only that Marchese made false statements about his relationship with Wakefern to a single real estate broker and has not alleged a broader scheme of publicly distributed false statements to deceive the purchasing public.[4]

---

[4] Plaintiff does allege that Marchese has engaged in "similar conduct with respect to multiple Westside Market stores in New York City." Compl. ¶ 40. However, there are no allegations as to what "similar conduct" Marchese engaged in. Plaintiff has not alleged what sort of statements Marchese has made with respect to those Westside Market stores, how those statements were made, or to whom they were made. Regardless, even assuming Plaintiff intended to allege that Marchese has continued to claim a relationship with Wakefern to various real estate brokers in order to obtain a commercial lease to operate a supermarket, Plaintiff's claim would fail: such statements would still be discrete communications targeted to specific non-consumers rather than promotions or advertisements disseminated to a segment of the purchasing public.

Accordingly, Defendants' motion to dismiss as to Plaintiff's claim for false advertising under Section 43(a) of the Lanham Act is granted.

### C.     Count Three: Unfair Competition Under New Jersey Common Law

Unfair competition claims under New Jersey common law mirror claims brought under Section 43(a) of the Lanham Act and are evaluated under identical standards. *Telebrands Corp. v. Ragner Tech. Corp.*, No. 16-3474 (ES)(MAH), 2019 WL 1468156, at *5 (D.N.J. Apr. 3, 2019). As such, for the same reasons the Court has dismissed Plaintiff's Lanham Act claims, the Court will also dismiss Plaintiff's common law claim for unfair competition.

### D.     Count Four: Declaratory Judgment

Finally, Plaintiff seeks a declaration from the Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that "Defendants have no interest, and have never had any interest whatsoever in Wakefern or in any SHOPRITE® store." Compl. ¶ 62. Relief under the Declaratory Judgment Act is predicated on the existence of an "actual controversy" between the parties that satisfies the case-or-controversy requirement of Article III of the United States Constitution. 28 U.S.C. § 2201(a). To satisfy this requirement, the dispute between the parties must be "definite and concrete, touching the legal relations of the parties having adverse legal interests" such that it is "real and substantial and admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotations omitted). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Here, a declaratory judgment is not warranted because there does not appear to be any dispute between the parties with respect to Defendants' interest in or affiliation with Wakefern or ShopRite®. First, the Court has already dismissed each of the three substantive claims for relief asserted in the Complaint and, as such, none of these claims can constitute the substantial and immediate controversy warranting declaratory relief. Second, Defendants do not maintain that they are Wakefern members or hold any interest in Wakefern or ShopRite®. In other words, there does not appear to be any actual dispute between the parties about Defendants' interest, or lack thereof, in Wakefern or in ShopRite® that would necessitate a declaration from this Court clarifying the legal rights of, or relationship between, the parties.

Accordingly, the Court will dismiss Plaintiff's separate claim for a declaratory judgment.

### E.     Plaintiff's Motion for Expedited Discovery

Also pending before the Court is Plaintiff's motion for expedited discovery in order to take the deposition of Marchese in light of further false statements he has allegedly made to Wakefern's own accountants and unaffiliated real estate brokers in Texas with respect

8

to his ownerships interests in various supermarkets. Because the Court has dismissed each of the counts asserted in the Complaint, there is no need for expedited discovery. Plaintiff's motion is therefore **DENIED** as moot.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. Plaintiff's motion for expedited discovery is **DENIED** as moot. An appropriate order follows.

/s/ William J. Martini
**William J. Martini, U.S.D.J.**

**Date: August 26, 2021**