**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WAKEFERN FOOD CORP.,

                Plaintiff,

                v.

CHRISTOPHER MARCHESE a/k/a
CHRISTOPHER MARCHESA a/k/a
CHRISTOPHER MARCHESI, and FAMILY
MARKETS LIMITED LIABILITY
COMPANY,

                Defendants.

CIVIL ACTION
No. 2:20-15949-WJM-MF

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF WAKEFERN FOOD CORP.'S BRIEF IN OPPOSITION TO
DEFENDANTS CHRISTOPHER MARCHESE AND FAMILY MARKETS LIMITED
LIABILITY COMPANY'S MOTION FOR ATTORNEYS' FEES AND COSTS**

---

**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West
Suite 301
Princeton, New Jersey 08540
(609) 455-1540

Attorneys for Plaintiff
Wakefern Food Corp.

Of Counsel and on the Brief:

Anthony Argiropoulos, Esq.
Theodora McCormick, Esq.
Robert Lufrano, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................ii

PRELIMINARY STATEMENT..............................................1

RELEVANT BACKGROUND................................................3

      A.   Wakefern Learns of Mr. Marchese's
           Misrepresentations...................................3

      B.   Wakefern Files Suit Against Mr. Marchese and
           Family Markets......................................5

      C.   Wakefern Proposes a Non-Monetary Settlement to
           Resolve this Case...................................6

      D.   Defendants Serve Wakefern with an Improper "Rule
           11 Letter" and File a Motion to Dismiss
           Wakefern's Complaint................................9

      E.   Mr. Marchese Continues Making Misrepresentations
           While Defendants' Motion to Dismiss is Pending......11

      F.   The Court Dismisses Wakefern's Complaint on
           Narrow Legal Grounds...............................12

ARGUMENT..........................................................13

I.    DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES
       BECAUSE THEY ARE NOT PREVAILING PARTIES.................13

II.   EVEN IF DEFENDANTS WERE PREVAILING PARTIES, FEES MAY
       ONLY BE AWARDED IN "EXCEPTIONAL CASES.".................18

III.  THIS IS NOT AN "EXCEPTIONAL CASE."......................19

      A.   Wakefern's Complaint Was Filed And Pursued In
           Good Faith.........................................19

      B.   Wakefern's Litigation Conduct Was Reasonable And
           Unexceptional......................................23

IV.   DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES UNDER
       NEW JERSEY COMMON LAW...................................25

V.    DEFENDANTS' CLAIMED ATTORNEYS' FEES ARE NOT REASONABLE....28

CONCLUSION........................................................30

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Alief Ind. Sch. Dist. v. C.C. ex rel. Kenneth C.,
  655 F.3d 412 (5th Cir. 2011) ...........................14, 15

Americans for Prosperity v. Grewal,
  No. 19-cv-14228, 2021 WL 1153194 (D.N.J. Mar. 26,
  2021) ......................................................28

Bonczyk v. Levine,
  No. 20-cv-192, 2020 WL 5803071 (M.D. Fla. Aug. 28,
  2020) ......................................................15

Bracco Diagnostics, Inc. v. Amersham Health, Inc.,
  627 F. Supp. 2d 384 (D.N.J 2009) ..........................21

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health &
  Human Res.,
  532 U.S. 598 (2001) ................................14, 15, 16

Christiansen v. Christiansen,
  46 N.J. Super. 101 (App. Div. 1957) .......................17

CRST Van Expedited, Inc. v. E.E.O.C.,
  578 U.S. 948 (2016) .......................................17

Dunster Live, LLC v. LoneStar Logos Management Co.,
  LLC,
  908 F.3d 948 (5th Cir. 2018) ..........................14, 15

Evans v. Port Authority of New York and New Jersey,
  273 F.3d 346 (3d Cir. 2001) ...............................29

Fair Wind Sailing, Inc. v. Dempster,
  764 F.3d 303 (3d Cir. 2014) ...............................19

Fleishmann Distilling Corp. v. Maier Brewing Co.,
  386 U.S. 714 (1967) .......................................26

Hensley v. Eckerhart,
  461 U.S. 424 (1983) .......................................28

Hoffman v. Hampshire Labs, Inc.,
  405 N.J. Super. 105 (App. Div. 2009) ......................18

J & J Snack Foods, Corp. v. Earthgrains Co.,
    No. 00-cv-6230, 2003 WL 21051711 (D.N.J. May 9,
    2003) .................................................22, 23

Kern v. Medical Protective Co., Inc.,
    No. 13-cv-2286, 2019 WL 2265330 (D.N.J. May 28,
    2019) ......................................................19

Lai v. Metuchen Borough,
    No. A-2135-11T1, 2012 WL 6681923 (N.J. Super. Ct.
    App. Div. Dec. 26, 2012) ...................................18

In re Miller,
    730 F.3d 198 (3d Cir. 2013) .................................9

Mixing & Mass Transfer Technologies, LLC v. SPX Corp.,
    No. 19-cv-529, 2020 WL 6484180 (D. Del. Nov. 4,
    2020) ..................................................16, 17

New Jersey Physicians United Reciprocal Exchange v.
    Boynton & Boynton, Inc.,
    No. 12-cv-05610, 2014 WL 317179 (D.N.J. Jan. 28,
    2014) ......................................................22

Octane Fitness v. ICON Health & Fitness, Inc.,
    572 U.S. 545 (2014) ....................................18, 19

Oscar v. Alaska Dep't of Educ. & Early Dev.,
    541 F.3d 978 (9th Cir. 2008) ...............................16

Petit-Clair v. New Jersey,
    No. 14-cv-07082, 2016 WL 1568282 (D.N.J. Apr. 18,
    2016) .......................................................9

Red Devil Tools v. Tip Top Brush Co.,
    50 N.J. 563 (1967) .....................................26, 27

Refundo, LLC v. Drake Enterprises, Ltd.,
    No. 13-cv-643, 2013 WL 1750016 (D.N.J. Apr. 22,
    2013) ......................................................22

Renna v. Cty. of Union, N.J.,
    No. 11-cv-3328, 2015 WL 93800 (D.N.J. Jan. 7, 2015) ........20

RFR Indus., Inc. v. Century Steps, Inc.,
    477 F.3d 1348 (Fed. Cir. 2007) .............................15

Rode v. Dellarciprete,
    892 F.2d 1177 (3d Cir. 1990) ...............................28

*S.B. v. KinderCare Learning Centers, LLC*,
  815 F.3d 150 (3d Cir. 2016) ................................14

*Sabinsa Corp. v. Creative Compounds, LLC*,
  No. 04-cv-4239, 2011 WL 3236096 (D.N.J. July 27,
  2011) .....................................................27

*Sanofi-Aventis U.S. LLC v. Novo Nordisk, Inc.*,
  No. 06-cv-1369, 2006 WL 8457950 (D.N.J. June 23,
  2006) .....................................................21

*Securacomm Consulting, Inc. v. Securacom Inc.*,
  224 F.3d 273 (3d Cir. 2000) ...........................23, 24

*Shenouda v. Mehanna*,
  203 F.R.D. 166 ...........................................14

*Sream, Inc. v. K and R of WPB, Inc.*,
  No. 17-cv-80222, 2017 WL 6409015 (S.D. Fla. June 26,
  2017) .....................................................16

*Szabo Food Serv., Inc. v. Canteen Corp.*,
  823 F.2d 1073 (7th Cir. 1987) ............................15

*Tarta Luna Properties, LLC v. Harvest Restaurants*
  *Group LLC*,
  466 N.J. Super. 137 (App. Div. 2021) .....................27

*United States v. Milner*,
  583 F.3d 117 (9th Cir. 2009) .............................15

*Velasquez v. Franz*,
  123 N.J. 498 (1991) ......................................17

*Wakefern Food Corp., et al. v. Tyrome Abrams, et al.*,
  No. 2:20-cv-12083 (D.N.J.) ................................3

*Wopsock v. Dalton*,
  No. 12-cv-570, 2020 WL 5645621 (D. Utah Sept. 22,
  2020) .....................................................15

**Statutes**

35 U.S.C. § 285..............................................17

Lanham Act, Section 35(a)................................_passim_

Pub. L. No. 93-600, 88 Stat. 1955 (1975).....................26

**Rules**

Federal Rule of Evidence 408....................................3

Federal Rule of Civil Procedure 11...................3, 9, 10, 24

Federal Rule of Civil Procedure 12(b)(6).......................16

Federal Rule of Civil Procedure 26(f).........................11

Local Civil Rule 54.2(a)(3)...................................28

New Jersey Court Rule 4:42-9(a)...............................25

## PRELIMINARY STATEMENT

Defendants Christopher Marchese ("Mr. Marchese") and Family Markets Limited Liability Company ("Family Markets") (collectively "Defendants") seek attorneys' fees under Section 35(a) of the Lanham Act, which permits an award of fees in exceptional cases to prevailing parties. This is not an exceptional case and Defendants are not prevailing parties.

First, this Court dismissed Wakefern Food Corp.'s ("Wakefern") Complaint without prejudice on narrow legal grounds. In order to be a prevailing party under the Lanham Act, the party seeking fees must have obtained a judgment on the merits. A dismissal without prejudice is not a judgment on the merits because it does not alter the legal relationship between the parties or immunize the Defendant from further litigation. Instead, no one has prevailed because the case can be re-filed in the future.

Second, this is not an exceptional case. Exceptional cases are ones where both the factual and legal components of the case are frivolous or objectively baseless and the losing party litigated the case in a harassing or vexatious manner. Neither is true here.

Wakefern did not file a baseless complaint against an innocent defendant. Mr. Marchese formed a sham supermarket company, Family Markets, and made false statements to a real

estate broker that he owned four SHOPRITE® supermarkets in New Jersey and was in the process of becoming a Wakefern member. These facts are undisputed.

It is also undisputed that when Wakefern filed its Complaint, Mr. Marchese had established a fake supermarket company and was falsely claiming to members of the public that he had an affiliation with Wakefern. Wakefern filed suit in order to protect its reputation, brand, and SHOPRITE® trademark. After Wakefern filed its Complaint, Mr. Marchese doubled down on his false representations and continued to claim that he owned hundreds of supermarkets, provided a fake financial statement to a different real estate broker, and contacted Wakefern's accountants requesting their assistance with providing three years' worth of financial statements for his non-existent supermarket company.

Wakefern did not litigate this case in a vexatious or overly aggressive manner. Just the opposite. Wakefern gave Defendants multiple extensions to answer the Complaint and at Defendants' request, proposed an early non-monetary settlement whereby Defendants would stipulate that they had no interest in Wakefern or any of its SHOPRITE® members, and agree not to make any false representations in this regard in the future.[1] In

---

[1]    Wakefern is offering evidence of the parties' settlement negotiations not to prove the validity of its claims against

response to this offer, Defendants served Wakefern with a procedurally and substantively defective "Rule 11 letter."

In short, Defendants are not prevailing parties and the only thing "exceptional" about this case was Mr. Marchese's strange conduct. Wakefern did nothing more than take steps to protect the brand and the goodwill it has built up around its SHOPRITE® trademark over the last seventy-five (75) years.

## RELEVANT BACKGROUND

**A.   Wakefern Learns of Mr. Marchese's Misrepresentations.**

Earlier this year, a real estate broker contacted Wakefern and informed it that Mr. Marchese had contacted the broker about leasing a vacant 50,000 square foot supermarket in Middlesex, New Jersey, and represented that he had an ownership interest in four SHOPRITE® supermarkets in New Jersey. See Cplt. ¶ 37 (ECF No. 1).[2] Counsel for Wakefern interviewed the broker and learned that Mr. Marchese also told the broker that he had started the

_____

Defendants but rather to show that its litigation conduct was neither vexatious nor harassing. Accordingly, it is admissible pursuant to Fed. R. Evid. 408.

[2]   Since 2020, Wakefern—the largest retailer-owned supermarket cooperative in the United States—has been the repeated victim of fraud. Most notable of these frauds involved a ring of individuals infringing on Wakefern's SHOPRITE® trademark and masquerading as Wakefern members in an effort to deceive the public and secure millions of dollars in financing for non-existent transactions. See Wakefern Food Corp., et al. v. Tyrome Abrams, et al., No. 2:20-cv-12083 (D.N.J.)

process of becoming a Wakefern member himself. Id. ¶ 38. It was not until the broker contacted Wakefern that he learned that Mr. Marchese was not a Wakefern member and had no affiliation whatsoever with Wakefern or SHOPRITE®. Id. ¶ 39.

Through its investigation, Wakefern learned that Mr. Marchese had filed formation documents with the State of New Jersey for a supermarket business, Family Markets, which never actually operated a physical supermarket or grocery store. Id. ¶¶ 9, 23-25, 27. In addition, Wakefern discovered that in 2016, Defendants sought the assistance of counsel, Nicoll Davis & Spinella LLP ("Nicoll Davis"), to negotiate a commercial lease for a vacant supermarket in Pompton Lakes. Id. ¶ 26. According to publicly-available court documents, Defendants never paid Nicoll Davis for the work the firm performed in relation to this transaction, and currently owe the firm upwards of $10,000 in legal fees. Id. ¶ 10, Ex. A. Counsel for Wakefern confirmed with Nicoll Davis that the 2017 judgment remains unpaid. See Mar. 12, 2021 T. McCormick Letter at 3-4 (Ostrove Cert., Ex. C) (ECF No. 26-1).

When Mr. Marchese spoke to the real estate broker and lied about having an affiliation with Wakefern and SHOPRITE®, he was apparently attempting to deceive the broker into leasing him the vacant supermarket in Middlesex for his own commercial benefit. See Cplt. ¶¶ 4, 37. The Court recognized this, as well. See

4

Opinion at 5 (ECF No. 24) ("Plaintiff is correct that Marchese's conduct in invoking Wakefern and the SHOPRITE® brand may have been an affirmative act ultimately designed to achieve some sort of commercial benefit (i.e. the acquisition of commercial space from which to operate a supermarket)."). In other words, it was evident that Defendants were attempting to trade on the good will and reputation Wakefern had built up around its SHOPRITE® brand for their own improper purposes. Id.; Pltf. Br. at 12, 21, 26, 29 (ECF No. 17).

### B.   **Wakefern Files Suit Against Mr. Marchese and Family Markets.**

Wakefern filed suit against Defendants on November 12, 2020, for violations of the Lanham Act (trademark infringement and false advertising) and common law unfair competition. See Cplt. ¶¶ 41-63. Among other things, Wakefern sought a permanent injunction restraining Defendants from further misuse of the SHOPRITE® mark and from making any further misrepresentations concerning an affiliation or relationship with Wakefern, SHOPRITE®, or any of Wakefern's members. Id., Prayer for Relief ¶ B. Wakefern also sought an accounting of all persons to whom Marchese had misrepresented an affiliation or relationship with Wakefern or SHOPRITE®, and a declaration that Defendants have no interest whatsoever in Wakefern or any SHOPRITE® store. Id., Prayer for Relief ¶¶ C-D.

After filing its Complaint, Wakefern's process server made eight separate attempts to personally serve Mr. Marchese (individually and as Family Markets' registered agent), but he refused to accept service. See R. Lufrano Cert. of Service ¶¶ 5-6 (ECF No. 7). Defendants claim Wakefern had a private investigator "spy" on Mr. Marchese and take photographs of packages addressed to Family Markets on Marchese's front porch, and allege this was an unduly aggressive litigation tactic. See Def. Br. at 2-3 (ECF No. 26-2). This is not true. These photographs were taken by the process server, not a private investigator, on one of his eight separate attempts to serve Defendants with Wakefern's Complaint. See Mar. 12, 2021 T. McCormick Letter at 4 (Ostrove Cert., Ex. C) (ECF No. 26-1). Wakefern ultimately served Defendants via substituted service by regular and certified mail. See R. Lufrano Cert. of Service ¶¶ 7-8 (ECF No. 7).[3]

**C.   Wakefern Proposes a Non-Monetary Settlement to Resolve this Case.**

From the outset, Wakefern's counsel extended every professional courtesy to Mr. Marchese's counsel and attempted in good faith to amicably resolve this matter. Wakefern's counsel

---

[3]   Mr. Marchese complains that Wakefern never sent him a "cease and desist" letter. His efforts to evade service and the fact that he continued making false representations to real estate brokers and accountants even after Wakefern sued him demonstrate that a cease and desist would not have deterred him.

agreed to extend Defendants' time to respond to Wakefern's Complaint by two weeks more than Defendants had originally requested, even when Defendants' response was already three weeks overdue. See Jan. 27, 2021 T. McCormick Email (McCormick Decl., Ex. A). At Mr. Marchese's counsel's request, Wakefern's counsel also agreed to provide Defendants with a settlement demand during this time. Id.

On February 5, 2021, Wakefern's counsel provided Mr. Marchese's counsel with a settlement framework for discussion. Among other things, Wakefern sought payment of its attorneys' fees and for Mr. Marchese to identify everyone to whom he had had made any false statements claiming an affiliation with Wakefern or SHOPRITE®. See Feb. 5, 2021 T. McCormick Email (McCormick Decl., Ex. B).

Thereafter, on February 11, 2021, Wakefern's counsel and Mr. Marchese's attorney had a telephonic settlement conference during which counsel for Mr. Marchese indicated that his client would be willing to agree never to hold himself out as having any affiliation of any kind with Wakefern or SHOPRITE® in the future, but represented that aside from the real estate broker mentioned in the Complaint, Mr. Marchese had not made any other misrepresentations claiming an affiliation with Wakefern or SHOPRITE®. See T. McCormick Decl. ¶¶ 12-13. Mr. Marchese's

counsel also indicated that his client would not (and could not) pay Wakefern's attorneys' fees. Id. ¶ 14.

On February 19, 2021, based on the representations made by Mr. Marchese's counsel, Wakefern's counsel forwarded a revised settlement proposal, which would have required Mr. Marchese to: (i) admit that he falsely represented to a real estate broker that he had an ownership interest in four SHOPRITE® stores; (ii) admit that he never had an affiliation or relationship with Wakefern or any of its members including any SHOPRITE® store; and (iii) agree to make no further misrepresentations about Wakefern or its members including any SHOPRITE® store in the future. See Feb. 19, 2021 R. Lufrano Email and Attachments (McCormick Decl., Ex. C). The revised settlement proposal did not require any payment of attorney's fees, but included a provision that would have allowed Wakefern to go back to Court and seek fees if Mr. Marchese made any further misrepresentations regarding Wakefern or SHOPRITE® in the future. Id.

Upon receipt of Wakefern's revised settlement proposal, Mr. Marchese's attorney objected to the "admissions" included within same. See Feb. 19, 2021 E. Ostrove Email and T. McCormick Emails (McCormick Decl., Ex. D). In response, Wakefern's counsel requested that Mr. Marchese's counsel provide any proposed edits he had to these documents. Id. Counsel for Mr. Marchese

indicated that he would revise the draft settlement agreement and stated that he "would like to get this resolved sooner rather than later." Id. At the same time, Wakefern's counsel offered to extend Defendants' time to respond to Wakefern's Complaint again, by another thirty days, while the parties continued negotiating a resolution of this case—an offer which Mr. Marchese's counsel accepted. Id.; Stipulation and Order (ECF No. 12).

In other words, in order to resolve this matter, all that Wakefern requested was that Mr. Marchese stop making false representations about a non-existent affiliation with Wakefern and SHOPRITE®. Wakefern's only goal was and is to protect the goodwill surrounding its SHOPRITE® brand.

**D. Defendants Serve Wakefern with an Improper "Rule 11 Letter" and File a Motion to Dismiss Wakefern's Complaint.**

Defendants never provided a counterproposal to Wakefern's February 19, 2021 settlement offer. See McCormick Decl. ¶ 15. Instead, on March 8, 2021, Mr. Marchese's attorney served Wakefern with a procedurally defective "Rule 11 letter." See Mar. 8, 2021 E. Ostrove Email and Letter (McCormick Decl., Ex. E). No motion for sanctions was served. See In re Miller, 730 F.3d 198, 204-05 (3d Cir. 2013) (explaining that the failure to strictly comply with Rule 11's procedural safe harbor requirements, i.e., failure to serve the actual sanctions

motions on the opposing party, precludes an award of sanctions); Petit-Clair v. New Jersey, No. 14-cv-07082, 2016 WL 1568282, at *2 (D.N.J. Apr. 18, 2016) (Martini, J.) (holding that "warning or safe harbor letters do not comply with Rule 11's safe harbor provision") (citations omitted).

Beyond the procedural deficiencies in Defendants' "Rule 11 letter," the letter was substantively without merit. Wakefern responded on March 12, 2021 detailing these issues. See Mar. 12, 2021 T. McCormick Letter (Ostrove Cert., Ex. C) (ECF No. 26-1).

Despite all of this, Wakefern never stopped litigating in good faith. On April 19, 2021, Wakefern submitted its opposition to Defendants' motion to dismiss. See Pltf. Br. (ECF No. 17). On the same date, Wakefern consented to another extension, this time for Defendants to submit a reply brief in further support of their motion to dismiss. See Apr. 19, 2021 T. McCormick Email (McCormick Decl., Ex. F); Adjournment Request (ECF No. 18). In fact, Wakefern also consented to Defendants' attorneys' request for a two-cycle adjournment of the instant Motion for Attorneys' Fees and Costs so that Defendants could have more time to submit their reply brief. See Sept. 17, 2021 T. McCormick Email (McCormick Decl., Ex. G).

**E.   Mr. Marchese Continues Making Misrepresentations While Defendants' Motion to Dismiss is Pending.**

While Defendants' motion to dismiss was pending, Mr. Marchese contacted Wakefern's accounting firm, Wiss & Company, and represented that he was the owner of a supermarket in East Rutherford, New Jersey, and requested assistance preparing three years of financial statement for a commercial landlord. After being informed of this, counsel for Wakefern reached out to Mr. Marchese's counsel and advised him that his client had contacted Wakefern's accountants and falsely claimed that he was the owner of a supermarket, contrary to representations made by counsel in his motion to dismiss. See May 4, 2021 T. McCormick Letter (McCormick Decl., Ex. H). After counsel for Mr. Marchese ignored two requests for a meet-and-confer to address this issue (see id.; May 4, 2021 R. Lufrano and E. Ostrove Emails (McCormick Decl., Ex. I)), Wakefern filed a motion for expedited discovery to take Marchese's deposition before the Rule 26(f) conference. See Motion for Expedited Discovery (ECF No. 20).

Wakefern's counsel was also contacted by another real estate firm, this time in Texas, about Mr. Marchese. Mr. Marchese provided the Texas broker with a fake "financial statement" and falsely claimed that he owned hundreds of supermarkets, insinuating an affiliation with Wakefern. See Pltf. Br. at 3 (ECF No. 20-2). These representations

11

contradicted Mr. Marchese's claim to the Court that he had "yet
to secure commercial real estate to operate a supermarket." Id.
In light of these developments, Wakefern requested leave to take
Mr. Marchese's deposition on an expedited basis in order to find
out the identity of everyone with whom he had spoken or to whom
he had made any kind of representations about Wakefern or
SHOPRITE® and any purported affiliation with Wakefern or
SHOPRITE®. Id.

### F.   The Court Dismisses Wakefern's Complaint on Narrow Legal Grounds.

On August 26, 2021, the Court dismissed Wakefern's
Complaint without prejudice on narrow legal questions related to
interpretations of the Lanham Act. See Order ¶ 3 (ECF No. 25).

The Court concluded that Wakefern had not sufficiently
pleaded the "use in commerce" element of the Lanham Act. See
Opinion at 4 (ECF No. 24). While finding that Wakefern had not
established that Defendants had used the SHOPRITE® mark in
commerce, the Court acknowledged that "there are comparatively
few cases thoroughly addressing the sorts of unlawful 'use'
necessary to state a claim for trademark infringement." Id.
Further, the Court recognized that "there remains an open
question in the Third Circuit as to the scope of the 'uses'
encompassed by Section 1114's 'use in commerce' requirement..."
Id. Moreover, the Court found that "Plaintiff is correct that

12

Marchese's conduct in invoking Wakefern and the SHOPRITE® brand may have been an affirmative act ultimately designed to achieve some sort of commercial benefit (i.e. the acquisition of commercial space from which to operate a supermarket)." Id. at 5.

The Court also found that Wakefern had not sufficiently pleaded that Mr. Marchese "disseminated [his false representations concerning Wakefern and SHOPRITE®] to the relevant purchasing public" to establish a claim for false advertising under the Lanham Act. Id. at 6. Nowhere in the Court's Opinion did the Court even remotely suggest that the positions taken by Wakefern were unreasonable or otherwise "exceptional."

**ARGUMENT**

## I.   **DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES BECAUSE THEY ARE NOT PREVAILING PARTIES.**

A threshold requirement for a party to obtain an award of attorneys' fees is that the party must be a "prevailing party." Here, Defendants are not prevailing parties because Wakefern's Complaint was dismissed by the Court without prejudice. See Order ¶ 3 (ECF No. 25).

In order to be a "prevailing party" under federal fee-shifting statutes, the party applying for an award of fees must have "received a judgment on the merits" that creates a

"material alteration of the legal relationship of the parties." Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001). A dismissal without prejudice is not an adjudication on the merits because it does not immunize the defendant from the risk of further litigation, and therefore does not materially alter the legal relationship of the parties. In Shenouda v. Mehanna, 203 F.R.D. 166, 171 (D.N.J. 2001, this Court explained the general principle that dismissal of a plaintiff's complaint without prejudice "does not act as an adjudication on the merits." See also S.B. v. KinderCare Learning Centers, LLC, 815 F.3d 150, 152 (3d Cir. 2016) (finding that "a dismissal without prejudice is not a final decision because the plaintiff may refile the complaint...").

In the recent case of Dunster Live, LLC v. LoneStar Logos Management Co., LLC, 908 F.3d 948, 951 (5th Cir. 2018), the Court of Appeals for the Fifth Circuit discussed the reasoning behind this rule, specifically with respect to federal statutory "prevailing party" provisions:

> Most federal fee statutes allow a court to award fees only to a prevailing party. Buckhannon Bd. and Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 532 U.S. 598, 602-03 (2001). A dismissal without prejudice means no one has prevailed; the litigation is just postponed with the possibility of the winner being decided at a later time in a new arena. Alief Ind. Sch. Dist. v. C.C. ex rel. Kenneth C., 655 F.3d 412, 418-19 (5th Cir. 2011) (dismissal without prejudice does not

14

> grant prevailing party status in Individuals with Disabilities Education Act suit); <u>United States v. Milner</u>, 583 F.3d 117, 1196-97 (9th Cir. 2009) (same for Equal Access to Justice Act); <u>RFR Indus., Inc. v. Century Steps, Inc.</u>, 477 F.3d 1348, 1353 (Fed. Cir. 2007) (same for Patent Act fee provision); <u>Szabo Food Serv., Inc. v. Canteen Corp.</u>, 823 F.2d 1073, 1076-77 (7th Cir. 1987) (same for Civil Rights Act fee provision). In the words of the standard the Supreme Court has announced for determining prevailing party status, a dismissal that allows for refiling does not result in a "material alteration of the legal relationship of the parties." <u>Buckhannon</u>, 532 U.S. at 604; <u>see Alief</u>, 655 F.3d at 418 (citing <u>Milner</u>, 583 F.3d at 1196-97). A dismissal without prejudice thus does not make any party a prevailing one.

In light of this analysis, the <u>Dunster</u> court denied defendants' request for an award of attorneys' fees under another federal statute, the Defend Trade Secrets Act, following a dismissal of plaintiff's complaint without prejudice. <u>Id.</u> at 950. <u>See also</u> <u>Bonczyk v. Levine</u>, No. 20-cv-192, 2020 WL 5803071, at *2 (M.D. Fla. Aug. 28, 2020) (denying motion for attorneys' fees under the Copyright Act because the plaintiff's complaint was dismissed without prejudice, thus entitling plaintiff to bring any claims she has against the defendant at a later time); <u>Wopsock v. Dalton</u>, No. 12-cv-570, 2020 WL 5645621, at *3 (D. Utah Sept. 22, 2020) (explaining that "[t]he distinction between claims dismissed with prejudice and without prejudice is dispositive on this point. A dismissal without prejudice does

not materially alter the legal relationship of the parties because a party may re-file those claims.").

Similarly, in Sream, Inc. v. K and R of WPB, Inc., No. 17-cv-80222, 2017 WL 6409015, at * 2 (S.D. Fla. June 26, 2017), a district court denied a defendant's motion for attorney's fees under Section 35(a) of the Lanham Act after dismissing the plaintiff's complaint without prejudice. In doing so, the court relied on Buckhannon and other relevant precedent from multiple circuits. Id. (citing, inter alia, Oscar v. Alaska Dep't of Educ. & Early Dev., 541 F.3d 978, 981 (9th Cir. 2008) for the proposition that a defendant is not a "prevailing party" based on a dismissal without prejudice "because plaintiff may re-file the case.").

Also relevant is a recent decision from within the Third Circuit. In Mixing & Mass Transfer Technologies, LLC v. SPX Corp., No. 19-cv-529, 2020 WL 6484180, at *1 (D. Del. Nov. 4, 2020), a plaintiff filed a complaint for infringement under the Patent Act. The defendant moved to dismiss under Rule 12(b)(6) for failure to state a claim, and the court granted the motion, dismissing the patent infringement claim without prejudice. Id. at *1-2. The defendant then applied for an award of attorneys' fees under Section 285 of the Patent Act, the relevant text of

16

which is identical to Section 35(a) of the Lanham Act.[4] Id. at
*2. In denying the defendant's application for attorneys' fees,
the court held that the defendants were not "prevailing
parties," because the court's dismissal of the complaint without
prejudice would not prevent the plaintiff from reasserting the
same claims against the defendants in another action. Id. at *3.
A dismissal without prejudice "is not the type of 'material
alteration of the legal relationship of the parties' that is the
touchstone of the prevailing party inquiry." Id. (citing CRST
Van Expedited, Inc. v. E.E.O.C., 578 U.S. 948 (2016)).

The same reasoning applies here. Defendants are not
"prevailing parties" because they have not obtained a final
adjudication of Wakefern's claims on the merits and the legal
relationship between Wakefern and Defendants has not been
materially altered.

The result is the same under New Jersey law. See, e.g.,
Velasquez v. Franz, 123 N.J. 498, 509 (1991) ("The words
'without prejudice' generally indicate that 'there has been no
adjudication on the merits of the claim, and that a subsequent
complaint alleging the same cause of action will not be barred
simply by reason of its prior dismissal.'"); Christiansen v.
Christiansen, 46 N.J. Super. 101, 109 (App. Div. 1957) ("A

---

[4]     A "court in exceptional cases may award reasonable attorney
fees to the prevailing party." 35 U.S.C. § 285.

dismissal without prejudice ... adjudicates nothing. Another action may be instituted and the same facts urged either alone or in company with others as the basis of a claim for relief."); Lai v. Metuchen Borough, No. A-2135-11T1, 2012 WL 6681923, at *1 (N.J. Super. Ct. App. Div. Dec. 26, 2012) ("dismissals for ... failure to state a claim are generally without prejudice because they are not adjudications on the merits.") (citing Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009)).

For all of the reasons set forth above, Defendants are not entitled to an award of attorneys' fees and costs, and their Motion should be denied.

## II.   EVEN IF DEFENDANTS WERE PREVAILING PARTIES, FEES MAY ONLY BE AWARDED IN "EXCEPTIONAL CASES."

Not only is Mr. Marchese barred from fee shifting under the Lanham Act because the Court dismissed Wakefern's Complaint without prejudice, but this is also **NOT** an exceptional case under the Lanham Act. In Octane Fitness v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 n.6 (2014), the Supreme Court held that the factors to be considered in determining whether a case is "exceptional" include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."

18

Octane Fitness dealt with claims for attorneys' fees under the Patent Act's "exceptional case" provision, but in Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303 (3d Cir. 2014), the Court of Appeals for the Third Circuit held that Octane Fitness applies to Section 35(a) of the Lanham Act, as well:

> Under Octane Fitness, a district court may find a case "exceptional," and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an "unreasonable manner." ... Whether litigation positions or litigation tactics are "exceptional" enough to merit attorneys' fees must be determined by district courts "in the case-by-case exercise of their discretion, considering the totality of the circumstances."

Even if claims have "little chance of success when filed," if they are not so "uncommon" or "exceptionally meritless" as to stand out from others, fees will not be awarded. See Kern v. Medical Protective Co., Inc., No. 13-cv-2286, 2019 WL 2265330, at *3 (D.N.J. May 28, 2019).

**III. THIS IS NOT AN "EXCEPTIONAL CASE."**

> **A.   Wakefern's Complaint Was Filed And Pursued In Good Faith.**

Before filing its Complaint, Wakefern conducted an extensive investigation into Mr. Marchese's misrepresentations about Wakefern and SHOPRITE®. Wakefern's Complaint was grounded in the facts discovered during this investigation. Further,

while the parties naturally disagreed on their interpretations of the relevant law, and although Wakefern's Complaint was eventually dismissed, there was no "unusual discrepancy" in the merits of the parties' positions. Wakefern relied on the text of the Lanham Act itself and extensive case law in opposing Defendants' motion to dismiss. See generally Pltf. Br. (ECF No. 17).

One of the primary cases relied on by Defendants in their Motion, Renna v. Cty. of Union, N.J., No. 11-cv-3328, 2015 WL 93800 (D.N.J. Jan. 7, 2015), is inapposite. In Renna, fees were awarded to a plaintiff under Section 35(a) of the Lanham Act after a defendant litigated a case to summary judgment while asserting trademark rights he knew did not exist and based on interpretations of federal and state statutes that by their express terms did not provide protection to defendant's use of a particular mark. Id. at *8. On this basis, Judge Hammer found that the defendant's positions were "objectively unreasonable," and thus recommended an award of fees to the plaintiff. Id.

Here, in contrast, Wakefern's positions were based on a good faith interpretation of the facts and the law. Moreover, unlike the defendant in Renna, Wakefern did not "double down" on positions it knew were baseless and continue litigating in the face of all evidence to the contrary. On the contrary, evidence

continued to mount, even after Wakefern filed its Complaint, that supported Wakefern's theory concerning Marchese's conduct.

As noted above, even in dismissing Wakefern's trademark infringement claim based on an analysis of the Lanham Act's "use in commerce" requirement, the Court acknowledged that there were few cases discussing "use in commerce," and conceded that "there remains an open question in the Third Circuit as to the scope of the 'uses' encompassed by Section 1114's 'use in commerce' requirement..." Opinion at 4 (ECF No. 24).

In addition, while dismissing Wakefern's Lanham Act false advertising claim, the Court still noted that "Plaintiff is correct that Marchese's conduct in invoking Wakefern and the SHOPRITE® brand may have been an affirmative act ultimately designed to achieve some sort of commercial benefit (i.e. the acquisition of commercial space from which to operate a supermarket)." See Opinion at 5 (ECF No. 24). And, Wakefern cited case law from this Court in support of its argument that Marchese's oral statements constituted commercial advertising. See Pltf. Br. at 20 (ECF No. 17) (citing Sanofi-Aventis U.S. LLC v. Novo Nordisk, Inc., No. 06-cv-1369, 2006 WL 8457950 (D.N.J. June 23, 2006); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 461 (D.N.J 2009)). The Court disagreed, however, on the grounds that Marchese's misrepresentations were not "sufficiently disseminated to the

relevant purchasing public." Opinion at 6 (ECF No. 24). The
Court also rejected Wakefern's good faith reliance on opinions
from this Court that the degree to which Marchese's false
statements were disseminated to the public was a question of
fact inappropriate for resolution on a motion to dismiss. See
Pltf. Br. at 22-24 (ECF No. 17) (citing New Jersey Physicians
United Reciprocal Exchange v. Boynton & Boynton, Inc., No. 12-
cv-05610, 2014 WL 317179 (D.N.J. Jan. 28, 2014); Refundo, LLC v.
Drake Enterprises, Ltd., No. 13-cv-643, 2013 WL 1750016 (D.N.J.
Apr. 22, 2013)); Opinion at 6-7 (ECF No. 24).

     That Wakefern was ultimately on the losing side of these
arguments is of no moment. Its arguments were made in good
faith. Even when dismissing Wakefern's Complaint, the Court
never suggested that Wakefern's positions were meritless or
objectively unreasonable. They were not.

     Defendants also rely on J & J Snack Foods, Corp. v.
Earthgrains Co., No. 00-cv-6230, 2003 WL 21051711 (D.N.J. May 9,
2003) for the proposition that Wakefern's Complaint was
"specious" and "meritless." See Def. Br. at 7 (ECF No. 26-2). As
explained above, it was not. Regardless, even in J & J Snack
Foods, the court rejected the defendant's argument that
plaintiff's initial filing, which plaintiff asserted was taken
to protect its trademark rights, was in bad faith. Id. at *4.
There, the court only found that the case "became exceptional"

after the court denied plaintiff's application for a preliminary injunction and the court outlined what evidence plaintiff needed to proceed and plaintiff continued the litigation despite the wholesale absence of that evidence. Id. at *1-2.

### B.  Wakefern's Litigation Conduct Was Reasonable And Unexceptional.

Defendants variously claim that Wakefern's litigation conduct was "unreasonable," "overly aggressive," and "vexatious," and that Wakefern was "flexing its muscles," "trying to bully Defendants," and engaged in "an effort to foreclose any possibility that Mr. Marchese would ever be able to operate a supermarket." Def. Br. at 2, 7-8 (ECF No. 26-2). This is not true.

Defendants rely primarily on Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273 (3d Cir. 2000) for the proposition that Wakefern's litigation conduct renders this an "exceptional case." Defendants are incorrect. In Securacomm, the court found that a defendant's conduct was "exceptional" because it made a deliberate effort to "bury" the plaintiff's principal and "'take everything he had' by filing multiple suits and complaints against him and his attorneys in a variety of legal fora." 224 F.3d at 282. The court found that the defendant "did not confine itself to litigating the case fairly on the merits" and instead tried to "crush" the plaintiff and its principal. Id.

Wakefern has done nothing like the defendant in <u>Securacomm</u>. Wakefern: (i) filed a Complaint, and permitted Defendants two extensions and 100 days to respond to it; (ii) proposed a non-monetary resolution of this case that would have required Marchese to do nothing more than tell the truth; (iii) agreed to an extension of time for Defendants to file a reply brief in support of their own motion to dismiss, even after Defendants torpedoed the settlement negotiations they asked for and served Wakefern with a meritless "Rule 11 Letter"; and (iv) filed a short discovery motion after Mr. Marchese's counsel ignored Wakefern's requests to meet-and-confer about his client's post-suit misrepresentations to Wakefern's accountants. This is hardly Wakefern trying to "take everything [Mr. Marchese] had" or trying to "bury" and "crush" Mr. Marchese. On the contrary, it demonstrates Wakefern's honest motivations, <u>i.e.</u>, to protect the strength, integrity, and reputation of its SHOPRITE® brand.

In addition, this entire case was triggered by Mr. Marchese's undisputed misrepresentations about Wakefern and SHOPRITE®. Wakefern has no interest in stopping Mr. Marchese from operating a supermarket—its only interest was and is stopping Mr. Marchese from creating a false association between himself and Wakefern's SHOPRITE® brand, something Mr. Marchese continued to do even after Wakefern filed its Complaint. <u>See</u> Motion for Expedited Discovery (ECF No. 22).

Relatedly, the suggestion that this case has "tarnished Defendants' reputation" and "all but destroyed Defendants' ability to own or operate a supermarket," see Def. Br. at 11 (ECF No. 26-2), is silly. Mr. Marchese first registered Family Markets as a business in New Jersey in 2015. See Cplt. ¶ 23. As of this year, he had "yet to secure commercial real estate to operate a supermarket." Def. Br. at 3 (ECF No. 14-1).

In short, Wakefern's Complaint does nothing more than set forth factual allegations related to Mr. Marchese's conduct, which, notwithstanding the Court's finding that these facts do not rise to the level of a Lanham Act claim, are undisputed. Again, there is nothing "exceptional" or improper about Wakefern's conduct, and the Motion should be denied.

## IV.  DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES UNDER NEW JERSEY COMMON LAW.

Just as they are not entitled to an award of attorneys' fees under the Lanham Act, Defendants are not entitled to fees under New Jersey common law. Beyond the "prevailing party" issues discussed previously, there is nothing about this case that merits an award of fees under New Jersey law.

The starting point for any award of attorneys' fees under New Jersey law is New Jersey Court Rule 4:42-9(a), which provides that such fees are only allowable in specific types of cases (not relevant here), by statute, or otherwise by the New

25

Jersey Court Rules. Defendants do not cite to any New Jersey
Court Rule or statute permitting an award of attorneys' fees in
this case. Rather, they rely primarily on the Supreme Court of
New Jersey's decision in Red Devil Tools v. Tip Top Brush Co.,
50 N.J. 563 (1967).

Red Devil Tools did not set out a general rule of
applicability permitting recovery of attorneys' fees in New
Jersey unfair competition cases when an application for fees
under a concomitant Lanham Act claim fails. Indeed, at the time
Red Devil Tools was decided, the Lanham Act did not permit an
award of attorneys' fees at all. See Fleishmann Distilling Corp.
v. Maier Brewing Co., 386 U.S. 714, 720-21 (1967).[5] Against this
backdrop, the Red Devil Tools court held that while the Lanham
Act did not permit an award of attorneys' fees, it "has no
relation to unfair trade practice cases under the common law."
50 N.J. at 576. The court then determined that the original
relief sought by the plaintiff, an injunction and an accounting,
would not serve "the administration of justice," and decided
instead to substitute an award of counsel fees for the "more
burdensome accounting." Id.

---

[5]   Section 35(a) of the Lanham Act was subsequently amended to
its current form. See Pub. L. No. 93-600, 88 Stat. 1955 (1975).

To be sure, "New Jersey's state law is not read to award attorneys' fees in every successful infringement action." Sabinsa Corp. v. Creative Compounds, LLC, No. 04-cv-4239, 2011 WL 3236096, at *11 (D.N.J. July 27, 2011). "Therefore an analysis of the equities must be what is called for." Id. (denying award of counsel fees under New Jersey common law). Moreover, in Tarta Luna Properties, LLC v. Harvest Restaurants Group LLC, 466 N.J. Super. 137, 157 (App. Div. 2021), the New Jersey Appellate Division further narrowed the contours of Red Devil Tools, explaining that in order to award fees when not provided for by statute, court rule, or contract, there must be evidence of "willful and calculated" or "intentional" misconduct.

For all the reasons set forth already, the equities do not favor awarding Defendants' attorneys' fees. While this Court found that Wakefern's Complaint did not give rise to a Lanham Act claim, the Court acknowledged that Marchese may have acted with an improper purpose, see Opinion at 4 (ECF No. 24), and in fact, Marchese's bad conduct continued even after Wakefern filed its Complaint. See Motion for Expedited Discovery (ECF No. 22). This is in contrast with Wakefern, which was attempting to protect its trademark rights and litigated this case professionally and in good faith. There has been no misconduct

27

by Wakefern—intentional or otherwise—and the equities do not favor awarding attorneys' fees.

## V.   DEFENDANTS' CLAIMED ATTORNEYS' FEES ARE NOT REASONABLE.

Even if Defendants were prevailing parties and this was an "exceptional case" (they aren't and this isn't), Defendants' claimed attorneys' fees are not reasonable. It is axiomatic that "[t]he party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). In addition, L. Civ. R. 54.2(a)(3) requires Defendants to provide "a description of the services rendered..." Importantly, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Defendants here have failed to meet their burden, for multiple reasons.

By way of non-exhaustive example, Defendants' billing records contain many redacted time entries, which encompass $9,903.50 of the total amount of fees claimed by Defendants. See Ostrove Cert., Ex. A (ECF No. 26-1). These redactions make it impossible to determine the work performed, whether the time expended was reasonable, and whether these fees are compensable at all. As such, fees associated with these entries cannot be awarded. See Americans for Prosperity v. Grewal, No. 19-cv-14228, 2021 WL 1153194, at *4 (D.N.J. Mar. 26, 2021) (reducing

28

fee award where "redactions leave the Court with no basis to ascertain the nature of the billed activities corresponding to these time entries...").

Beyond that, many of the time entries that are un-redacted lack so little detail as to make it impossible to determine whether the fees expended were reasonable. For example, the March 2021 invoice reflects 34.4 hours and $8,738.00 expended on preparing a motion to dismiss by three attorneys without any detail beyond what is effectively the same time entry repeated day after day——some variation of "draft/revise/prepare motion to dismiss." <u>See</u> Ostrove Cert., Ex. A (ECF No. 26-1); <u>Evans v. Port Authority of New York and New Jersey</u>, 273 F.3d 346, 349 (3d Cir. 2001) (vacating attorneys' fee award where "District Court did not devote adequate attention to the hours expended and the duplication of effort by [the] attorneys.").

In sum, Defendants have failed to meet their burden of showing that their claimed attorneys' fees are reasonable. The requested fees should therefore be denied, but to the extent the Court is inclined to award fees at all, Wakefern requests the opportunity, if necessary, to submit further briefing on this issue.

29

## CONCLUSION

For the reasons set forth above, Wakefern respectfully requests that Defendants' Motion for Attorneys' Fees and Costs be denied.

**EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Plaintiff
Wakefern Food Corp.

By:   s/Anthony Argiropoulos
     ANTHONY ARGIROPOULOS
     THEODORA McCORMICK
     ROBERT LUFRANO
     150 College Road West
     Suite 301
     Princeton, New Jersey 08540
     (609) 455-1540

Dated: September 20, 2021