UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **WAKEFERN FOOD CORP.,** | : | |
| Plaintiff, | : | Civil Action No. 20-15949 (WJM) |
| v. | : | |
| **CHRISTOPHER MARCHESE, et al.,** | : | OPINION AND ORDER |
| Defendants. | : | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Christopher Marchese and Family Markets Limited Liability Company (collectively "Defendants") for attorneys' fees and costs. *See* Dkt. No. 26. Plaintiff Wakefern Food Corp. ("Wakefern" or "Plaintiff") opposes Defendants' motion. *See* Dkt. No. 28. For the reasons set forth below, Defendants' motion for attorneys' fees and costs [Dkt. No. 26] is **DENIED**.

**I. BACKGROUND**

Plaintiff is a New Jersey corporation and the largest retailer-owned supermarket cooperative in the United States. Dkt. No. 1, Complaint at ¶ 7. Plaintiff is the exclusive owner of the ShopRite® name, brand and mark registered with the United States Patent and Trademark Office, as well as numerous other registered marks used in connection with the ShopRite® brand, and licenses the use of the ShopRite® mark exclusively to members of its cooperative. *Id.* at ¶¶ 14, 16.

Defendant Marchese, a resident of New Jersey, formed and serves as the registered agent and representative of Defendant Family Markets Limited Liability Company ("Family Markets"). *Id.* at ¶ 23. Family Markets was formed by Marchese in May 2015 for the stated purpose of carrying

1

out a retail supermarket business. *Id.* at Ex. B. Since its formation in 2015, it does not appear that Family Markets has carried out any business and Family Markets does not currently own or operate any supermarket. *Id.* at ¶¶ 25, 27. Defendants are not members of the Wakefern cooperative, are not associated with or related to Plaintiff or any members of the Wakefern cooperative, and do not have any agreements or licenses to use any of Plaintiff's trademarks, including those connected with the ShopRite® brand. *Id.* at ¶¶ 14, 16.

On June 26, 2020, Marchese contacted Plaintiff and spoke with one of its representatives regarding his alleged desire to join the Wakefern cooperative. *Id.* at ¶ 29. During that conversation, Marchese attempted to "present himself as an experienced proprietor of supermarkets throughout New Jersey" by claiming that he operated a specific Foodtown in Plainsboro, New Jersey – which Plaintiff later discovered was vacant – and that he owned several other Foodtown locations throughout New Jersey. *Id.* at ¶¶ 30-33. Marchese was asked to provide Plaintiff with a written summary of his qualifications and experience and to notify Plaintiff of his intent to become a Wakefern member in writing. *Id.* at ¶ 35. Marchese did not provide the requested information and there was no further contact between Marchese and Plaintiff. *Id.* at ¶ 36.

In addition to contacting Plaintiff, Marchese contacted a real estate broker to inquire about a listing of a vacant supermarket in Middlesex, New Jersey. *Id.* at ¶ 37. Marchese informed the real estate broker that he wanted to lease the vacant supermarket and claimed he was the owner of "an active supermarket business," Family Markets, and had an ownership interest in multiple Wakefern members, including four ShopRite® supermarkets in New Jersey. *Id.* The real estate broker subsequently contacted Plaintiff to confirm the veracity of Marchese's representations and was informed that Marchese was not a Wakefern member and had no affiliation with Wakefern or the ShopRite® brand. *Id.* at ¶ 39.

Based on Marchese's alleged conduct, Plaintiff filed its Complaint in this matter asserting four causes of action against Defendants for: (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition under New Jersey state common law; and (4) a declaration that Defendants have no interest in Wakefern, any of its members of the ShopRite® brand under the Declaratory Judgment Act, 28 U.S.C. § 2201.

In response to Plaintiff's Complaint, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 14. On August 26, 2021, the Court granted Defendants' motion and dismissed Plaintiff's Complaint in its entirety without prejudice. *See* Dkt. No. 25. Thereafter, Defendants filed the present motion.

## II. DISCUSSION

Pursuant to the Lanham Act, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Before deciding whether an award of attorney's fees is appropriate in a given case . . . a court must determine whether the party seeking fees has prevailed in the litigation." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) (citations omitted). While there are various statutes that award attorney's fees to a "prevailing party," the Supreme Court has interpreted the term in a consistent manner across those statutes. *Id.*

In determining whether a plaintiff has prevailed, the "touchstone" of the prevailing party inquiry is whether there was a "material alteration of the legal relationship of the parties." *Id.* (citation omitted). "This change must be marked by judicial imprimatur." *Id.* (citation omitted). A prevailing defendant may recover "fees expended in frivolous, unreasonable, or groundless litigation when the case is resolved in the defendant's favor, whether on the merits or not." *Id.* at 1652.

"The congressional policy regarding the exercise of district court discretion in the ultimate decision whether to award fees does not distinguish between merits-based and non-merits based judgments." *Id*. Indeed, "one purpose of the fee-shifting provision is to deter the bringing of lawsuits without proper foundation." *Id.* (citation omitted). The defendant has "fulfilled its primary objective" when the "plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id.* at 1651. Defendants can be prevailing parties "even if the court's final judgment rejects the plaintiff's claims for a nonmerits reason." *Id.*

Plaintiff argues that because the Complaint was dismissed by the Court without prejudice, and it is therefore not barred from asserting its claims against Defendants at a later time, Defendants are not the prevailing party. Defendants disagree and contend that are in fact the prevailing party because they "achieved their primary objective of successfully defeating Plaintiff's Complaint, in its entirety, under Fed. R. Civ. P. 12(b)(6)." Dkt. No. 29 at p. 5.

Although the United States Court of Appeals for the Third Circuit has not addressed whether a court's dismissal of a plaintiff's claims without prejudice renders a defendant the prevailing party, other circuit courts considering this issue have held that "a judgment that has no preclusive effect on the plaintiff's ability to re-file does not confer prevailing party status." *Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 79 (4th Cir. 2019) (collecting cases). Courts within the Third Circuit have also found that a dismissal without prejudice would not prevent a plaintiff from reasserting the same claims against the defendant in another action and is thus "not the type of 'material alteration of the legal relationship of the parties' that is the touchstone of the prevailing-party inquiry." *Mixing & Mass Transfer Techs., LLC v. SPX Corp.*, No. CV 19-529 (MN), 2020 WL 6484180, at *3 (D. Del. Nov. 4, 2020) (citing *CRST*, 136 S. Ct. at 1646). If a judgment with no preclusive effect does not confer prevailing party status, then it appears that

4

Defendants are not the prevailing party in this matter following the Court's dismissal of Plaintiff's claims without prejudice.

Defendants, however, cite to *Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289 (11th Cir. 2021) in support of their contention that they are the prevailing party in spite of the Court's dismissal of Plaintiff's claims without prejudice. In *Beach Blitz*, four of the plaintiff's five claims were dismissed by the district court without prejudice and without leave to amend for failure to state a claim under Rule 12(b)(6). *Beach Blitz*, 13 F.4th at 1295. The plaintiff's fifth claim was also dismissed without prejudice under Rule 12(b)(6), but the plaintiff was given leave to amend. *Id.* The plaintiff did not move to amend its remaining claim and the district court dismissed the final claim without prejudice, entered judgment for the defendant, and closed the case "denying [the plaintiff] any further opportunity to amend its pleadings." *Id.* at 1296. The defendant subsequently moved for attorneys' fees, which the district court awarded finding that the defendant was the prevailing party. *Id.* The plaintiff then appealed. *Id.*

The United States Court of Appeals for the Eleventh Circuit observed that while a court's granting of a Rule 12(b)(6) motion to dismiss "usually signals a judgment on the merits," a dismissal of a plaintiff's claims without prejudice "normally communicates that a dismissal is not on the merits." *Id.* at 1299-1300. This tension between a Rule 12(b)(6) dismissal and a dismissal without prejudice "is not easy to reconcile" and the "inconsistent features" of such a judgment "point in different directions on the question of whether the judgment would be claim preclusive in a future action between the same parties raising the same claims." *Id.* at 1300. However, although the Eleventh Circuit declined to decide whether the judgment dismissing the case was claim preclusive, it held that the "involuntary Rule 12(b)(6) dismissal coupled with [the] denial of leave to amend clearly rebuffed with the court's imprimatur [the plaintiff's] attempt to alter its

legal relationship with [the defendant]" and thus conferred prevailing party status on the defendant. *Id.* at 1301.

While *Beach Blitz* does indeed lend credence to Defendants' position that they are the prevailing party in this matter, it is not conclusive. Unlike in *Beach Blitz*, where the plaintiff's claims were dismissed and the plaintiff was explicitly denied leave to amend, eventually with respect to all of its claims, Plaintiff's claims in this case were dismissed without prejudice and the Court made no mention of whether Plaintiff is entitled to amend and reassert its claims at a later date. Thus, because the Court's dismissal of Plaintiff's claims in this matter did not explicitly either permit or preclude the future filing of a curative amendment by Plaintiff, the Eleventh Circuit's holding in *Beach Blitz* that an "involuntary Rule 12(b)(6) dismissal coupled with [the] denial of leave to amend" renders a defendant the prevailing party does not necessitate a finding in this matter that Defendants have prevailed. *Id.*

Although it is unclear, based on the authority cited by both Plaintiff and Defendants, whether Defendants are the prevailing party following the Court's dismissal of Plaintiff's claims without prejudice and without denial of leave to amend, the Court need not determine definitively at this juncture whether Defendants are the prevailing party because the Court finds that this case does not meet the exceptionality requirement.

Section 35(a) of the Lanham Act provides that courts may permit attorney's fees only in "exceptional cases." *Fair Wind Sailing v. Dempster*, 764 F.3d 303, 313 (2014) (quoting 15 U.S.C. § 1117(a)). An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In the Third Circuit, cases are "exceptional"

6

under the Lanham Act "when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an unreasonable manner." *Fair Wind*, 764 F.3d at 315.

In making the exceptionality determination, courts consider Lanham Act attorney's fee awards on a case-by-case, totality of the circumstances basis. *Id.* Nevertheless, "*Octane Fitness* does not stand for the proposition that a case is exceptional merely because a losing party advanced weak or contradictory arguments in support of its claims." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, Civil A. 12-787, 2019 WL 1397387, at *5 (D.N.J. Mar. 28, 2019). Rather, factors to consider include "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n. 6. Furthermore, a court need not make a threshold determination that the losing party engaged in culpable conduct. *Id.* Instead, "[the] losing party's blameworthiness may well play a role in a district court's analysis of the "exceptionality" of a case." *Id.*

Defendants argue that this is an exceptional case because Plaintiff's claims are "not just frivolous, but demonstrate a willful attempt by a multi-billion-dollar corporation to destroy Defendants' reputation" and because Defendants have litigated this matter in an "unreasonable and overly aggressive way. . . ." Dkt. No. 26-2 at p. 7. Specifically, Defendants contend that the exceptional nature of this matter is demonstrated by Plaintiff's filing of its Complaint, which is "devoid of any factual allegations sufficient to sustain its claims," without first sending a Cease and Desist letter and by Plaintiff's decision to move forward with this matter even after receiving a "notice and demand letter detailing for Plaintiff the reasons why its Complaint violated Fed. R. Civ. P. 11 and demanding that it be immediately withdrawn." *Id.* at p. 8-9. According to Defendants, through its "aggressive tactics," Plaintiff has "all but destroyed Defendants' ability to

own or operate a supermarket" and Defendants' reputation "has been tarnished by Plaintiff's frivolous claims." *Id.* at p. 11.

In opposition, Plaintiff claims that this matter is not exceptional because Plaintiff conducted an "extensive investigation into [Defendants'] misrepresentations" prior to filing its Complaint and because Plaintiff's Complaint was "grounded in the facts discovered during [Plaintiff's] investigation." Dkt. No. 28 at p. 19. Plaintiff further argues that although its claims were dismissed by the Court, its claims and conduct in this matter were "based on a good faith interpretation of the facts and the law." *Id.* at p. 20. Additionally, Plaintiff contends that its filing and litigation of this matter resulted from Defendant Marchese's "undisputed misrepresentations" about Plaintiff and was aimed at protecting the ShopRite® brand. *Id.* at p. 24.

In support of their contention that this case is exceptional, Defendants cite to three cases, all of which are easily distinguishable and do not lead to a finding of exceptionality in this matter. The case primarily relied upon by Defendants is *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273 (3d Cir. 2000). In *Securacomm*, the plaintiff, which owned the registered mark "Securacomm Consulting," sued the defendant, Securacomm Incorporated, for various violations of the Lanham Act. *Securacomm*, 224 F.3d at 275-276. The defendant asserted counterclaims, which were later dismissed as meritless, and the plaintiff subsequently prevailed in the litigation and was awarded attorneys' fees. *Id.* at 276-277. In awarding attorneys' fees to the plaintiff, the district court determined that the case was exceptional because the defendant "sought to secure use of the trademark . . . not simply through fair and vigorous use of the legal process . . . [but] by first engaging in bad faith negotiations and then seeking to destroy a financially weaker adversary through oppressive litigation tactics." *Id.* at 277 (citation omitted).

The Third Circuit affirmed the district court's fee award finding that the case was

exceptional. In doing so, the Third Circuit noted the defendant's "deliberate effort . . . to 'bury' [the plaintiff] financially and 'take everything he had' by filing multiple suits and complaints against him and his attorneys in a variety of legal fora." *Id.* at 282 (citation omitted). Thus, in light of the district court's finding that the defendant "tried to prevail by crushing [the plaintiff] and his corporation" and "did not confine itself to litigating the case fairly on the merits," the Third Circuit affirmed the district court's finding of exceptionality. *Id.*

According to Defendants, Plaintiff is a "multi-billion-dollar corporation . . . just flexing its muscles" and "trying to bully Defendants." Dkt. No. 26-2 at p. 8. Defendants claim that this case is exceptional because Plaintiff, by refusing to withdraw its Complaint, hiring a private investigator to investigate Defendants, and filing a motion for expedited discovery, utilized "aggressive" litigation tactics against a "financially weaker opponent." *Id.* at p. 7 (citing *Securacomm*, 224 F.3d at 281-282).

Contrary to Defendants' assertions, the record of this matter is devoid of any evidence demonstrating Plaintiff's utilization of "aggressive" litigation tactics such as those supporting a finding of exceptionality in *Securacomm*. Plaintiff's complained of actions in refusing to withdraw its Complaint, continuing to investigate its claims, and pursuing expedited discovery are commonplace in civil litigation and a far cry from the defendant's attempts in *Securacomm* to "bury" its adversary by filing multiple lawsuits and employing "oppressive litigation tactics." *Securacomm*, 224 F.3d at 277, 282. Although Defendants repeatedly reference the disparity in the parties' financial resources, a case is not rendered exceptional simply based on a plaintiff's pursuit of claims against a financially weaker opponent. Here, beyond citing to Plaintiff's status as a "multi-billion-dollar supermarket," Defendants have failed to point to any evidence that Plaintiff utilized "baseless allegations and strong-arm tactics" in this litigation. Dkt.

9

No. 26-2 at p. 11. Rather, the Court finds that Plaintiff pursued its claims "through fair and vigorous use of the legal process," which does not support a finding of exceptionality. *Securacomm*, 224 F.3d at 277

Next, Defendants cite *J & J Snack Foods, Corp. v. Earthgrains Co.*, No. CIV.A. 00-6230 (JBS), 2003 WL 21051711, at *1 (D.N.J. May 9, 2003). In *J & J Snack Foods*, the plaintiff filed a complaint alleging that the defendants were infringing its "BREAK & BAKE" trademark by marketing their refrigerated cookie dough as "Break n' Bake Style" cookies. *J & J Snack Foods*, 2003 WL 21051711, at *1. The plaintiff requested preliminary injunctive relief to enjoin the defendants' use of the "BREAK & BAKE" mark, which the Court denied finding that the plaintiff was not likely to succeed on the merits of its claims. *Id.* at *2. Despite the Court's denial of the plaintiff's request for preliminary injunctive relief and "lengthy" accompanying opinion detailing the deficiencies in the plaintiff's claims, the plaintiff did not seek to amend its claims. *Id.* Indeed, the only attempt by the plaintiff to bolster its claims was the submission of an expert report which the Court later found to be inadmissible. *Id.*

The Court subsequently granted summary judgment in favor of the defendants and the defendants moved for attorneys' fees. *Id.* The Court awarded fees to the defendants finding that although the "initial filing of [the] action was justified and not exceptional," the plaintiff's "continued pursuit of the action" after receiving "the Court's clear guidance in the preliminary injunction opinion upon principles of well-settled law" as to the weaknesses of its claims and learning that its expert's findings did not support its position made the case exceptional. *Id.* at *4. The Court further noted that the plaintiff's position at the preliminary injunction stage was "defensible," though "not especially strong," and that "the preliminary injunction opinion was a chance for [the] plaintiff to pre-try its case and learn what evidence it needed to prevail." *Id.*

However, when the plaintiff "failed to fill the gaps or respond in any meaningful way to the Court's direction, yet pursued the non-meritorious case, the case became exceptional." *Id.*

Defendants argue that *J & J Snack Foods* supports a finding that this case is exceptional because Plaintiff continued to pursue its claims despite knowing they were meritless. Defendants' argument in this respect is squarely at odds with the record of this case. Unlike the plaintiff in *J & J Snack Foods*, which continued to pursue its claims through summary judgment despite the Court having found at the outset that its claims lacked merit, Plaintiff did not seek to amend its Complaint or otherwise pursue its claims following the Court's dismissal of Plaintiff's Complaint. As explicitly stated by the Court in *J & J Snack Foods*, it was not the plaintiff's initial filing of the case which rendered the case exceptional, but rather the plaintiff's continued pursuit of the case after being made aware that its claims were meritless. Here, Plaintiff made no attempt to continue to pursue its claims following the Court's dismissal of its Complaint. Accordingly, *J & J Snack Foods* does not support a finding that this case is exceptional.

Finally, Defendants cite to *Renna v. Cty. of Union, N.J.*, No. CIV.A. 11-3328 KM, 2015 WL 93800, at *1 (D.N.J. Jan. 7, 2015), *report and recommendation adopted,* No. 2:11-3328 KM MAH, 2015 WL 1815498 (D.N.J. Apr. 21, 2015). In *Renna*, the plaintiff filed an action seeking a declaratory judgment that a county seal she utilized during her public access television show could not be trademarked by the defendant. *Renna*, 2015 WL 93800, at *2. Although the defendant's application to trademark the seal had been denied prior to the filing of the plaintiff's complaint and the defendant was notified that an official insignia could not be registered, the defendant continued to assert throughout the litigation that the plaintiff had violated a registered trademark. *Id.* at *1, *8. In considering the plaintiff's motion for attorneys' fees, the Court found the case to be exceptional because while the defendant "[a]rguably . . . legitimately believed that the [s]eal

11

warranted the same protection as a legally protected mark," there was a "significant disparity in the merits of the parties' respective litigation positions" where the record demonstrated that the defendant "litigated [the] case by asserting that [the] [p]laintiff violated a registered trademark, which [the] [d]efendant knew, or should have known, did not exist." *Id.* at *8.

Defendants contend that *Renna* supports a finding of exceptionality in this matter because here, like in *Renna*, the "non-prevailing party knew that its [positions] were factually and legally groundless." Dkt. No. 26-2 at p. 7 (citing *Renna*, 2015 WL 93800, at *8). The Court does not agree. While Plaintiff's claims were indeed found by the Court to be deficient, the claims asserted by Plaintiff in this matter were far more credible than the defendant's assertion in *Renna* that its adversary had violated a knowingly nonexistent trademark. Although Defendants repeatedly reference the "specious" nature of Plaintiff's claims, Defendants have failed to demonstrate any "significant disparity in the merits of the parties' respective positions" or that Plaintiff's "positions were objectively unreasonable" in this case. *Renna*, 2015 WL 93800, at *8. Thus, the Court finds that *Renna* does not support a finding that this matter is exceptional. *Renna*, 2015 WL 93800, at *8.

Defendants' contentions that the deficiencies in Plaintiff's claims evidence an unusual discrepancy in the merits of the positions taken by the parties and that Plaintiff's conduct amounts to unreasonable litigation conduct have fallen far short or what is required for a finding of exceptionality. Despite Defendants' assertions to the contrary, Plaintiff's initial filing of this matter does not appear to have been unjustified and Plaintiff did not continue to pursue its claims following the Court's dismissal of its Complaint. As to Defendants' claims that Plaintiff's pursuit of this matter was "meant to bully Defendants," the Court finds record of this case devoid of any evidence of any unreasonable conduct by Plaintiff in this litigation. Dkt. No. 26-2 at p. 2.

Accordingly, in the absence of any evidence of an unusual discrepancy in the merits of the positions taken by the parties or unreasonable litigation conduct by Plaintiff, the Court finds that this case it not exceptional and Defendants' motion for attorneys' fees is therefore **DENIED**.[1]

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 24th day of May, 2022,

**ORDERED** that Defendants' motion for attorneys' fees [Dkt. No. 26] is **DENIED.**

 s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**

---

[1] Defendants additionally contend that they are entitled to attorneys' fees under New Jersey law. In support of this contention, Defendants argue that "[p]revailing parties may be awarded reasonable attorneys' fees under New Jersey law even where they are denied under statute by the Lanham Act." Dkt. No. 26-2 at p. 12-13 (citing *Sabinsa Corp. v. Creative Compounds, LLC*, No. CIV.A. 04-4239 DMC, 2011 WL 3236096, at *10 (D.N.J. July 27, 2011)). Defendants' unsupported and explained claim that Plaintiff's conduct in this matter "is exactly the sort of 'shenanigans' that warrant an award of attorneys' fees" under New Jersey law is wholly unconvincing. Dkt. No. 26-2 at p. 13. There is simply no evidence in this matter of "'willful and calculated' misconduct" on behalf of Plaintiff which would "warrant[] the deterrence of a fee award." *Tarta Luna Properties, LLC v. Harvest Restaurants Grp. LLC*, 466 N.J. Super. 137, 157, 245 A.3d 1005, 1017 (App. Div.), *cert. denied,* 246 N.J. 452, 251 A.3d 759 (2021) (quoting *Red Devil Tools v. Tip Top Brush Co.*, 50 N.J. 563, 565, 236 A.2d 861, 863 (1967)). Accordingly, Defendants' request for attorneys' fees under New Jersey law is **DENIED**.